COURT OF APPEALS
DECISION
DATED AND FILED

June 28, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2021AP533-CR**
**2021AP534-CR**
**STATE OF WISCONSIN**

Cir. Ct. Nos. **2017CF3107**
**2018CF968**

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

TRACY SMITER,

    DEFENDANT-APPELLANT.

APPEALS from judgments of the circuit court for Milwaukee County: JONATHAN D. WATTS, Judge. *Affirmed.*

Before Brash, C.J., Donald, P.J., and White, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Tracy Smiter appeals from two judgments of conviction, entered upon guilty pleas, for three counts of possession with intent to deliver narcotic drugs and one count of felony bail jumping. Smiter argues that the trial court erred when it denied his motion to suppress evidence. Upon review, we affirm.

## BACKGROUND

¶2     This case begins with a police encounter with Smiter in July 2017, which resulted in a criminal complaint in Milwaukee County Circuit Court case No. 2017CF3107 charging Smiter with possession with intent to deliver a controlled substance, three grams or less of heroin. Smiter was taken into custody while sitting in a Jeep Compass in a Walgreens parking lot on West Capitol Drive in Milwaukee. The police seized a plastic bag from his driver's door map pocket; testing showed that the recovered plastic bag contained multiple types of drugs.[1]

¶3     In February 2018, Smiter was charged in Milwaukee County Circuit Court case No. 2018CF968 after Smiter's arrest for allegedly arranging to sell and deliver heroin and cocaine to a Drug Enforcement Administration Task Force Officer. Smiter was charged with: (1) possession with intent to deliver a controlled substance, ten to fifty grams of heroin, as a second or subsequent offense, as a party to a crime; (2) possession with intent to deliver a controlled

---

[1] In November 2017, the State filed an amended information charging Smiter with four counts: (1) possession with intent to deliver a controlled substance, three grams or less of heroin, as a second or subsequent offense; (2) possession with intent to deliver a controlled substance, one gram or less of cocaine, as a second or subsequent offense; (3) possession of narcotic drugs, as a second or subsequent offense; and (4) possession of THC, as a second or subsequent offense.

substance, one gram or less of cocaine, as a second or subsequent offense, as a party to a crime; and (3) felony bail jumping.

¶4 In June 2018, Smiter moved to suppress the evidence from the July 2017 encounter. The trial court conducted a suppression hearing on October 25, 2018.[2] The court heard testimony from two Milwaukee Police Department officers: Peter Hauser and Evan Domine, as well as a Wisconsin State Public Defender's Office (SPD) investigator.

¶5 At the suppression hearing, Officer Hauser testified that he was on bicycle patrol with four other officers when they patrolled a Walgreens parking lot on West Capitol Drive in Milwaukee, a location that in his experience had been "notorious for drug dealing." He stated that Officer Domine approached a Jeep Compass on the passenger's side. He identified Smiter in court as the driver of the Jeep Compass.

¶6 Officer Hauser further testified that he pulled up on the driver's side of the jeep and observed that the driver's door was slightly open and the vehicle was occupied. He testified that Officer Domine told him that the occupants of the vehicle were going to be coming out of the vehicle, "which indicated to me that he observed an illegal item inside of the vehicle." After the driver's side door was fully opened, Officer Hauser could see the plastic bag in the map pocket in the door and he could "clearly see a green plant substance that [he] suspected to be marijuana." The plastic bag was recovered in the search of the vehicle; it

---

[2] The Honorable Janet Protasiewicz conducted the suppression hearing and reconsideration hearing. We refer to Judge Protasiewicz as the trial court. The Honorable Jonathan D. Watts accepted Smiter's pleas and sentenced him. We refer to Judge Watts as the circuit court.

3

contained "four smaller baggies that contained suspected marijuana, suspected heroin and suspected cocaine."

¶7      Officer Hauser reviewed police body camera video footage from the incident on the stand. He testified during cross-examination that the bicycle squad checked in with people they encountered on patrol, something he understood to be consensual encounters because the people were free to go, in other words, that he was not making a stop.

¶8      Officer Domine testified that he was on routine patrol with the bicycle squad in the Walgreens parking lot, which was "considerably one of the higher traffic lots for narcotic sales" and where he had previously participated in narcotics-based arrests. He recalled that the patrol made contact with all of the vehicles in the lot. He observed the Jeep Compass in question with occupants inside for one or three minutes, observing that no one had exited or entered the vehicle. He believed he made contact with the Jeep "to see how it was going."

¶9      Officer Domine further testified that while he was on the passenger's side of the vehicle looking inside, he "observed a bag of green-leafy substance on the driver's side of the vehicle." Based on his experience in hundreds of narcotics investigations, he believed that it was a "bag full of narcotics." He stated that he "would have notified the officers on the driver's side that I made an observation of something, then they should remove the driver." In reviewing the police body camera video footage from that day, Officer Domine testified that when he first pulled up to the vehicle, he was mounted on his bicycle, but he dismounted and "walked over to the driver's side of the vehicle" after he observed the drugs and alerted the other officers to remove the vehicle's occupants. Officer Domine reviewed photos of the crime scene and acknowledged that the plastic bag looked

like it was in different positions in two of the exhibit photographs, although both depicted the plastic bag in the map pocket.

¶10    Finally, the SPD investigator testified that he found a similar Jeep Compass for sale and took a series of photos of the vehicle with a person in the driver's seat to show what would be visible within the vehicle from outside the passenger's side door at various angles. He testified that in his experience the driver's legs obscured a line of sight to the map pocket in the driver's side door. The State questioned the investigator about what information he had about positioning of the steering wheel and seat as well as the size and position of the person in the driver's seat, and whether those factors would affect visibility. The investigator agreed he did not have that information about Smiter's vehicle and the facts and circumstance of the incident.

¶11    The trial court then made its findings and conclusions on the record. It summarized that Officer Hauser stated he patrolled the parking lot, checking on various vehicles, but did not see anything until he heard Officer Domine tell everyone to get out of the Jeep Compass. Officer Hauser indicated he did not see contraband until the door was opened when Smiter exited. The court then concluded that based on Officer Hauser's testimony alone there would not be enough to find reasonable suspicion; however, it then considered his testimony in conjunction with Officer Domine's testimony. The trial court stated:

> [Officer Domine] indicates that they're in the lot for a minute or two.
>
> He sees people sitting in the Jeep Compass. He's the first person to arrive on the passenger's side, and he talks about seeing the green-leafy substance in the bag on the driver's side.
>
> ….

But he testifies that he's approximately 7 feet up in the air, and he has the vantage point to observe the entire front compartment of the vehicle.

[The Assistant District Attorney] asked him how much could you see, and he said, quote, not much.

He then indicated that he could see the top portion of the baggy, and he could see the green-leafy substance.

[Smiter's counsel] cross-examined him. He indicated, right, he saw no puffs, any kind of smoke coming from the vehicle; he observed no odor.

There were two adults in the vehicle.

He told the defendant to get out. Both he and Officer Hauser conceded that the narcotics that were found were clearly in different positions.

….

Again, he indicated he had an unobstructed view of the front half of the vehicle.

¶12 The trial court then reviewed the SPD investigator's testimony, acknowledging that his exhibits showed "just how challenging it would be to see what's in that driver's side pocket from the perspective of the passenger's window." However, the trial court found that the "linchpin" of the case was that the court found "Officer Domine credible when he could see it, he couldn't see much, although he could see the top portion of the bag." The court agreed with the State's argument that when Officer Domine "walked around the vehicle and appears to bend down that we're seeing a corroboration of that testimony when he walked around to the driver's side door to observe what he reasonably believed was contraband." The trial court therefore denied Smiter's motion to suppress.

¶13 In November 2018, Smiter moved the court to reconsider the suppression motion and to reopen testimony. The trial court conducted a second hearing on December 19, 2018. Officer Hauser and Officer Domine were recalled

6

as witnesses. The focus of the second hearing was on the crime scene photographs and the positioning of the plastic bag of drugs in different exhibits. Officer Hauser testified that when reviewing the photos, the plastic bag of suspected drugs were in different positions in the map pocket. Officer Domine testified that he did not remember taking photographs at the crime scene, although he acknowledged he may have done so because it was reported he was the photographer in the police report. Officer Domine also testified that when he considered the two photos in question, the bag in the second photo looked like it was flipped over so you could see the rest of the drugs not visible in the first photo. During cross-examination by the State, Officer Domine reviewed body camera video footage that showed him moving the bag to look at the contents.

¶14     In March 2019, the trial court issued an order denying the motion for reconsideration. In an oral ruling, the court stated that at the prior hearing its decision hinged on "when Officer Domine testified that he saw the drugs from across the vehicle, what [the court] saw was that he immediately went around the vehicle to confirm what he saw." Upon reconsideration, the crucial issue for the court was the timing: "Did Officer Hauser open this door before Officer Domine saw the drugs?" The court concluded that the State convinced the court using the body camera video footage that "Officer Domine was there first before Officer Hauser[.]" Further, the court concluded that in the video, "[y]ou could also see into the vehicle and see the profile of Mr. Smiter looking forward." The trial court found Officer Domine "credible" and that "Officer Domine saw the contraband … before Officer Hauser opened the vehicle door."

¶15     In October 2019, Smiter entered guilty pleas before the circuit court. In exchange for pleas of guilty to counts one and two in the 2017 case and pleas of guilty to counts one and three on the 2018 case, the State dismissed and read in

count two of the 2018 case. Smiter entered guilty pleas, which the court accepted after a colloquy with him. In November 2019, the circuit court sentenced Smiter to a total sentence of ten years  bifurcated as six years of initial confinement and four years of extended supervision.

¶16    This appeal follows.[3]

## DISCUSSION

¶17    Smiter argues that the trial court erred when it denied his motion to suppress evidence from his July 2017 arrest.[4]  "Whether evidence should be suppressed is a question of constitutional fact." *State v. Floyd*, 2017 WI 78, ¶11, 377 Wis. 2d 394, 898 N.W.2d 560 (citation omitted).  We review a motion to suppress under a two-prong analysis. *State v. Felix*, 2012 WI 36, ¶22, 339 Wis. 2d 670, 811 N.W.2d 775.  First, we will sustain the trial court's findings of historical fact unless they are clearly erroneous. *Floyd*, 377 Wis. 2d 394, ¶11. Second, however, the trial court's application of the historical facts to constitutional principles is a question of law we review independently. *Id.*

¶18    The State and Smiter disagree about the proper characterization of the police encounter in the Walgreens parking lot in July 2017.  Smiter argues that the police lacked reasonable suspicion to conduct an investigatory stop of his vehicle, which was parked, and the officers testified that the vehicle did not

---

[3] We granted Smiter's motion to consolidate his appeals before this court on April 14, 2021.  Previously, the trial court granted the State's motion to join Smiter's two cases.

[4] A person may appeal an order denying a motion to suppress even though that person has pled guilty. WIS. STAT. § 971.31(10) (2019-20).  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

exhibit any outward signs of a traffic or ordinance violation.[5] He contends that without reasonable suspicion for the stop, the resulting seizure and search were in violation of the Fourth Amendment. Conversely, the State argues that the police had a consensual encounter with Smiter and other vehicles in the Walgreens parking lot and that when Officer Domine observed the bag of drugs in plain sight within the vehicle, the police then had probable cause to search the vehicle and seize the contraband.[6]

¶19 The Fourth Amendment guarantees individual security "against unreasonable searches and seizures." U.S. CONST. amend. IV. However, "a warrantless search of an automobile stopped by police officers who had probable cause to believe the vehicle contained contraband was not unreasonable within the meaning of the Fourth Amendment." *United States v. Ross*, 456 U.S. 798, 799 (1982). Here, the police officers were not stopping Smiter's vehicle to investigate a reasonable suspicion of illegal activity, but instead, Officer Domine, in the

---

[5] Smiter argues that the proper legal framework for the review of this incident is an investigatory stop. *See* WIS. STAT. § 968.24. "[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio*, 392 U.S. 1, 22 (1968). "In order for an investigative stop to be warranted, it is required that 'a law enforcement officer reasonably suspect, in light of his or her experience, that some kind of criminal activity has taken or is taking place.'" *State v. Limon*, 2008 WI App 77, ¶14, 312 Wis. 2d 174, 751 N.W.2d 877 (citation omitted). An investigatory stop "must be based on more than an officer's 'inchoate and unparticularized suspicion or hunch.'" *State v. Post*, 2007 WI 60, ¶10, 301 Wis. 2d 1, 733 N.W.2d 634 (quoting *Terry*, 392 U.S. at 27).

[6] The State, on the other hand, argues that the proper legal framework is a seizure after a consensual encounter. "Not every police-citizen interaction implicates the Fourth Amendment." *State v. VanBeek*, 2021 WI 51, ¶26, 397 Wis. 2d 311, 960 N.W.2d 32. Law enforcement officers may approach citizens and ask questions without implicating the Fourth Amendment "as long as the police do not convey a message that compliance with their requests is required." *Florida v. Bostick*, 501 U.S. 429, 435 (1991). "Absent law enforcement conduct that indicates required compliance, these types of interactions are consensual encounters and generally do not receive Fourth Amendment scrutiny." *VanBeek*, 397 Wis. 2d 311, ¶26.

course of interacting with Smiter in a public parking lot, observed the plastic bag of drugs in plain view inside the vehicle and then seized the evidence. Accordingly, our question of law is whether the seizure of that evidence was reasonable.[7]

¶20 The plain view doctrine sets forth three requirements for a police officer to make a "valid warrantless seizure of incriminating evidence" without violating the Fourth Amendment. *Horton v. California*, 496 U.S. 128, 136 (1990). "[T]he evidence must be in plain view, the officer must have a lawful right of access to the object itself, and the object's incriminating character must be immediately apparent." *State v. Guy*, 172 Wis. 2d 86, 101, 492 N.W.2d 311 (1992). "To show that the incriminating character of an item was immediately apparent, police must show they had probable cause to believe the item in plain view was evidence or contraband." *Id.*[8]

¶21 Although Smiter concedes that the second requirement of the officers' lawful right of access to the vehicle was satisfied, Smiter challenges the remaining two requirements: first, he contends that the plastic bag was not in

---

[7] "The right to security in person and property protected by the Fourth Amendment may be invaded in quite different ways by searches and seizures. A search compromises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property." *Horton v. California*, 496 U.S. 128, 133 (1990). When considering the plain view doctrine, it is important to note that an article observed or seized would not "involve any invasion of privacy." *Id.* "A seizure of the article, however, would obviously invade the owner's possessory interest." *Id.* at 134. Accordingly, "[i]f 'plain view' justifies an exception from an otherwise applicable warrant requirement … it must be an exception that is addressed to the concerns that are implicated by seizures rather than by searches." *Id.*

[8] "[P]robable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief,' that certain items may be contraband or stolen property or useful as evidence of a crime[.]" *Texas v. Brown*, 460 U.S. 730, 742, (1983) (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)).

plain view prior to Smiter exiting the vehicle; and second, he asserts that it was not immediately apparent that the plastic bag contained contraband, therefore, the police lacked probable cause to seize the plastic bag and take Smiter into custody. Here, the trial court considered both of these issues and rejected his position. We agree with the court.

¶22     For Smiter to prevail on either point, we would need to conclude that the trial court's findings of fact were clearly erroneous. However, this court's task is to search the record for reasons to sustain the trial court's findings, not reject them. *See State v. Wiskerchen*, 2019 WI 1, ¶30, 385 Wis. 2d 120, 921 N.W.2d 730. Under the proper standard of review, we "uphold a circuit court's findings of fact unless those findings go 'against the great weight and clear preponderance of the evidence.'" *Phelps v. Physicians Ins. Co. of Wisconsin*, 2009 WI 74, ¶51, 319 Wis. 2d 1, 768 N.W.2d 615 (citation omitted). "[E]ven if the evidence may have presented competing factual inferences," we affirm the court's findings as long "as the evidence would permit a reasonable person to make the same finding." *Wiskerchen*, 385 Wis. 2d 120, ¶30.

¶23     With that standard in mind, we turn to Smiter's two contentions: (1) that Officer Domine could not see the plastic bag in the map pocket from his vantage point prior to opening the door and (2) that illegal drugs were visible in the vehicle. First, the trial court found that Officer Domine was credible in his testimony that he saw the plastic bag of drugs in the map pocket through the car window before Officer Hauser opened the driver's side door. The court believed this was shown by Officer Domine's testimony and the body camera video footage, and that after Officer Domine made his observation, he alerted the other officers, dismounted from his bicycle, and walked to the driver's side to confirm

11

his observation. Officer Domine's actions confirmed exactly what he believed he observed—contraband—prior to the door opening.

¶24 Second, Smiter contends that the conflicting photograph exhibits raise doubt about what Officer Domine saw outside the vehicle and whether identifiable drugs were visible. The officer testified that he was experienced in hundreds of narcotics investigations and could recognize suspected drugs. The trial court found that the plastic bag was visible to Officer Domine and that he could recognize that the materials were contraband; in other words, Officer Domine had probable cause to believe illegal contraband was present inside the vehicle. For the trial court, one of its key finding was that Officer Domine acted upon his belief about the plastic bag before Officer Hauser interacted with Smiter.

¶25 After our examination of the record, we conclude that the trial court's findings were not clearly erroneous. Further, based upon those findings, the facts satisfy the three step standard to allow the seizure of contraband without a warrant. *Horton*, 496 U.S. at 136-37. The materials were within "plain view," the police were not in violation of the Fourth Amendment when they observed Smiter, and the "incriminating character" of the plastic bag was "immediately apparent." *See Guy*, 172 Wis. 2d at 101. Therefore, the seizure was reasonable and not in violation of the Fourth Amendment. The trial court did not err when it denied the motion to suppress the evidence.

**CONCLUSION**

¶26 For the reasons stated above, we conclude that the trial court did not err when it denied Smiter's motion to suppress. We affirm the judgments of conviction.

*By the Court.*—Judgments affirmed.

This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.